We'll hear argument in Manhattan Enterprise v. Higgins, No. 19-3441. Good morning, Your Honors. I'm Tracy Yung, appearing co-state for myself. After my argument, Mr. Justin Kuhn, the counsel for MEP, will speak. MEP is a business I own. The issue here is whether I'll complain. State the first element of abuse of profit claim. I will first talk about some background information, then I will go into the legal argument. For nearly a decade, two conspiring defendants, Thomas P. Higgins, attorney, and his client, Neil Meissner, ran abusive litigation campaign in the U.S. against three U.S. citizens across seven U.S. tribunals in New York, D.C., and Delaware. While Mr. Meissner, a German citizen, lives and works in Germany during the entire time, defendants lost all major motions, including eight appeals, redundant appeals, based on the exact same issue of capacity to sue. Their conduct was chastised by Magistrate Francis as objectively unreasonable, frivolous, troubling, and lack of tender. And just four months ago in January, defendants also failed in their initial cornerstone lawsuit in the New York State court. In terms of law, the lower court erred by ignoring that subpoenas and the deposition notices are legal processes. In fact, it never even mentioned them. In Board of Education v. Farmingdale, New York's highest court opined that abuse of subpoena powers is abuse of profit, and while a party abuses profit, it also offends the spirit of the legal procedure itself. In Ginsburg v. Ginsburg, the appellate division issued a reversal because the lower court ignored such allegations. So if we agree with you, so can I ask a question, which is, if we agree that the lawsuits themselves are not process that can be abused, but the subpoenas and deposition notices and maybe other discussion tools that compel people to do things are process that could be abused, could you make out your full claim just based on that conduct, on the subpoenas and the deposition notices? Not only that, in the complaint, we allege that for three years, Mr. Higgins and his clients made false statements before the state court, and they told the court that my signature and my driver's license are required for them to obtain corporate tax records. And it turned out that they themselves can obtain them without any constraint. And so just for that, the parties for three years, nonstop. And that alone is abuse of profit, because it's interference with my property and me as a person. So there's more to just the subpoenas and deposition notices, I think, were alleged more than that. No, I know, but I'm saying if we were to say that that is the process that can be abused. You know, have you. I'm just asking if you think you have enough allegations in the complaint that from subpoenas and from deposition notices, you've suffered sufficient harm that it would sustain a claim. I'm not attorney by training, but my sense is that that's just the selected processes. And in combination with all other other processes such as redundant duplicative appeals and lawsuits and continuing with them. You know, in aggregation, whether or not it's a process. And we also cited that. Yeah. So I can go ahead a minute more, but I want to ask. So in producing your, I guess, your driver's license and tax form, you say that those were requested to cast you as a villain and to harass you through prolonged discovery and to eliminate your business. But I don't really see a direct damage to you in any way by complying with the discovery that was compelled. Could you explain for a minute? Yes. So, your Honor, as you may be aware, Miss Meisner and I were engaged in a romantic relationship as well as a professional relationship. So I know Miss Meisner's character quite well, and he misused people's IDs and he doesn't pay people. And there are many, so that's why I was very vigilant about giving out my IDs because in fact there might be some damage I never even know. Because it just makes no sense that a 30-year experienced attorney and swore to the court that they have known that they had absolutely right to pay those tax returns on their own while filed letters, motions, compelling to do that. It just absolutely makes no sense. So I think the damage is something that they were trying to do and trying to possibly obtain some other information without me even knowing. Okay. Thank you. Thank you very much. We'll hear from Attorney Kuhn. He will have four minutes. Did I exceed my minute? Because I have a few more... Yes. Your time has expired. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court, Justin Kuhn, Moore Kuhn, PLLC, on behalf of Plaintiff Appellant Manhattan Enterprise Group. As the court, I feel, correctly noted when speaking to Ms. Yoon, the district court did ignore the subpoenas and the deposition notices, which are unquestionably process-capable of abuse under New York law. I would like to highlight, though, that the filing of the lawsuit is not, as the district court held, the mere filings of actions with ill intent. This was an abusive campaign, and the subpoenas and the notices, the deposition notices that took place, were all to further this campaign, and this situation must be viewed in its totality. Mr. Kuhn, I had difficulty with that argument because I couldn't really understand when filing a lawsuit and pursuing appeals, as lawsuits typically go on, one has the right to appeal and so on, how that becomes, or when that becomes a campaign. You know, it still looked to me as though the law was pretty well established in New York that filing a lawsuit is not, doesn't constitute abusive process, or the basis for pursuing an abusive process tort in New York, because it doesn't interfere unlawfully with someone's person or property, and it doesn't direct a person to, or require a person to refrain from doing a particular act. And so, you know, if you have one lawsuit, you have two lawsuits, you have three, you stress it as being a campaign, and certainly it sounds like this has been unfortunate and costly litigation over the course of seven years where both parties have filed and pursued litigation, including this piece of litigation. But I don't really see, and I believe you conceded in your brief that there's really no precedent for treating hearings, filings of lawsuits, and pursuit of appeals as the basis for abuse of process complaint. Am I right that you agree that there really is no precedent in New York for holding the initiation of a lawsuit to be the predicate, appropriate predicate for abuse of process suit? I agree with that the initiation of a lawsuit is not process capable of abuse. What we are putting forth in this case is that it's the continuation, the act of continuation after the filing of the lawsuit, whether that be through motions, subpoenas, deposition notices, the filing of additional lawsuits. For example here, after the defendant appellees were rebuffed in the state court, they filed a similar action in the Southern District of New York. And at that point, they were already directed that this action must be filed in Delaware, but they filed it in New York. So under New York law, there is a cause of action for filing a frivolous lawsuit for a bad purpose, which is a sort of malicious prosecution. So why are you bringing an abuse of process claim as opposed to a malicious prosecution one for filing the improper lawsuits? I believe that the difference is given the size of the campaign as we've highlighted in our briefs, I think you run into the issue of when can you bring the malicious prosecution claim. Do we have to bring successive claims when every one of the underlying lawsuits is resolved favorably? That's kind of my concern, which is there are these two separate torts with two different procedural requirements. So the malicious prosecution claim can only be brought after the suit terminates. So if we entertain the idea that an abuse of process claim can be premised on the filing of an improper lawsuit, isn't that a way to bring a malicious prosecution claim while getting around the requirements of bringing a malicious prosecution claim? I don't believe it creates a loophole in the malicious prosecution law. I believe it creates, in a very unique context, which is this context when you're dealing with this intense amount of personal animosity, intense amount of personal and business collateral objectives, and the filing of multiple lawsuits, one of which was unquestionably repetitive and filed in the wrong forum after two court orders of the trial court and appellate level were entered, where that's where you sort of get into the issue where it's sort of a plaintiff, or not a plaintiff, a party needs a venue to try to stop this conduct. Mr. Kuhn, do you really think this is unique? I believe this situation is unique. If you follow the dockets of the federal courts at all, you'll quickly find out that it's hardly unique for parties to harbor a lot of animosity and to sue each other numerous times. I mean, motions for sanctions, as well as actions for malicious prosecution, as Justice Benashi points out, is by far the more usual way of dealing with it. I believe this situation is unique because it was continuing, and it had no end in sight. The idea where there had to be an action taken to put defendants or the party, opposing party, on notice. Can I go back to something you said a moment ago? You did say a moment ago that bringing frivolous lawsuits in conjunction with abusive process like subpoenas and deposition notices and so on can form the basis of an abusive process claim. Breakout session mode is ending now. You will be returned to the main conference. This conference is being recorded. Only the main conference is recorded. Sorry, am I still in the conference? I'm here. I don't know what that was about. This is Justin Kuhn. I'm still here. Excuse me just a second. I just want to confirm with our courtroom deputy, Maria, that we're all okay, and this is being recorded, and we're still in the main court session. Is that right, Maria? Yes, Judge. I'm sorry about that. One of my phones ran out of battery, so I apologize, but I'm always good. Everything's okay. Very good. So the question is, if we agree with you that the subpoenas and the deposition notices are process capable of being abused, but the filing of the lawsuits are not, could you make out your full abusive process claim, or have you adequately alleged it just based on that conduct alone? I believe I would set forth a claim for abusive process because it is alleged that the subpoenas and the deposition notices were used to inflict improper economic harm, to unnecessarily expand this litigation, to chill business relationships. So yes, I believe that those would set forth an abusive process claim unto themselves. What was the harm exactly that was inflicted by using a process to obtain the driver's license and tax form in connection with the litigation? The harm in connection with the driver's license and tax form was, it was a very hotly contested issue below, whether Ms. Yoon would have to produce her driver's license, because it is alleged, and obviously defendants, if this case moves forward, put forth their case otherwise, that they sought that information to improperly use it to possibly engage in untoward activities with Ms. Yoon's identity. But that is what they might do, but is there anything that has happened? That has happened as a result of the driver's license? Yes, what damages have you alleged have occurred as a result of the misuse of this process? The damage would be the time used to rebuff it when they could have retained the tax records on their own, and the other is it would cast Ms. Yoon in a negative light, as if she was hiding something through the tax records when in fact she was not. Regardless of the driver's license, there are allegations about the subpoenas that are directed to employees of the business, and the allegation is that you're intending, you're subpoenaing them for purposes of intimidation and to inflict economic harm through the cost of defending as well as undermining the business, is that right? Correct, and there's also trademark disputes pending in India that involve Mr. Meissner and a third party over licensing rights, and the other allegation is that he wanted to expand the proceedings over who is the owner of the Manhattan Review Marks in order to gain an advantage in the trademark disputes in India, so that would be another collateral objection. So can you just explain to me, I saw the allegation, but can you explain to me what they did in the U.S. litigation that was specifically directed to giving them advantage in the India litigation? Well, anything that could be done to make the proceeding go on longer, so for example, if you increase discovery, for example, for fighting over a driver's license, if you filed a repetitive action in the Southern District of New York that just is going to take time to get dismissed, but it should have been filed directly in Delaware, that buys you more time before this trademark issue is resolved, and then you can continue to fight on in the foreign trademark dispute. But that's not actually giving you leverage in the India dispute, right? That's just buying time, preventing her from operating her business in the U.S. in the hope that whenever the India litigation is resolved, he'll prevail, right? Or is there something that he got in the U.S. litigation that gave him an advantage in the India litigation? The advantage from the India litigation – excuse me, the advantage from the U.S. litigation in India is that if there was an unfavorable outcome for Mr. Meissner in the U.S. litigation, that would destroy his rights in the India litigation. And by keeping the U.S. litigation going, it keeps the India litigation going to try to obtain a more favorable resolution in that proceeding. But it can be an abusive process to try to stretch out litigation, can it be? I mean, that comes down to if you're stretching it out as a tactic in your litigation or you're doing it for a collateral objective. And if the collateral objective is to gain an advantage in another litigation or to cause harm to another party, which is what we allege here, obviously you could say that's a feature of litigation. But then it comes down to the collateral objective, which is alleged here to be to destroy Ms. Yoon personally and economically, to gain the advantage in the India litigation, and to obviously destroy Manhattan Enterprise Group. Okay. Let's move on and hear from the appellee. You have two minutes to rebuttal, Mr. Kuhn, for what we've heard from Mr. Higgins. Thank you. Thank you. Thank you, Your Honors. Good morning. Thomas P. Higgins of Higgins and Trippett, New York. I represent Dr. Jorn Meisner and myself, named individually for the two defendants below. I think the oral argument that has taken place so far has pointed out that what the plaintiffs are seeking to do here is to have a novel collapse of the three-pronged elements of the tort of abusive processes established by New York and have this court replace that with a different version. And I don't think that that's something that we would ask this court to decline and offer. Well, Mr. Higgins, could you focus on the subpoenaing of Simon and Kelly causing damage, for example, to Ms. Yoon's business, as well as obtaining the driver's license and tax form for purposes that seem not evident from the face of it and potentially harmful or certainly intrusive? Yes, Your Honor. Mr. Kelly was the attorney for both Dr. Meisner and Ms. Yoon when they created the LLC together. And he was deposed over the supervision of the Commercial Division of New York in the main lawsuit that Dr. Meisner filed against Ms. Yoon and her entity. He was deposed and represented by counsel, and there was supervision at that time by Judge Owing, who was then replaced by Judge Masley. There was a retired judge, Judge Gamerman, who also— I just want you to address why those subpoenas, those depositions, are a use of process to potentially intimidate people affiliated with Ms. Yoon's business, drive up her cost of business, and are intended to pursue a collateral objective as opposed to kind of honest participation litigation. Well, the amended complaint below didn't highlight the depositions of the two parties you mentioned. And I'd like to talk about them because the deposition of Mr. Kelly led directly to admissible evidence in that state court action. There was no allegation at the time in front of the judge overseeing discovery that it was abusive or that any elements of the questioning that went on— and it was a one-day, probably five-hour deposition, and I conducted that deposition. So to try to claim that that somehow comes under the category of process, which would be literally unprecedented— I'm not aware of any case that talked about how a non-party deposition within the confines of the discovery satisfies the first prong of an abusive process claim. The other deposition that you mentioned was the deposition of a former employee who was deposed also. Again, she was represented by counsel. All parties had a chance to appear and ask questions, and the information that was obtained from that deposition was also used by Dr. Meisner in the case on his summary judgment motion. And indeed, Ms. Young used a lot of that evidence herself when she made her own summary judgment motion. So both those depositions, which were done, by the way, well in advance of the one-year filing period of this lawsuit, were being overseen by the Commercial Division of New York, were by all accounts proper, and I don't think that they would constitute process in the way that the law— Well, you don't dispute that a subpoena or a deposition notice is process. I mean, I hear you saying that you don't think it was abused, but a subpoena and a deposition notice is process, right? I'm not so sure about that, Judge, and let me tell you why. The term process is used in abuse of process is use of a judicial action that interferes with the person or property of someone. And the examples that New York has cited include recitation of cases that were set forth by Dean Prosser and Prosser on torts, and it includes things like an attachment, an execution, a garnishment, arrest, and— A subpoena requires somebody to appear at a place and give testimony even if they prefer not to, right? Well, that would have been Mr. Kelly who was subpoenaed as a non-party witness since he wasn't named, and it would be the former employee who also, again, didn't file this lawsuit. Ms. Young did. So she's relying on non-party depositions that were taken, again, overseen by a commercial division in New York that took place well in advance of—well before this lawsuit was filed, the one year— But Mr. Kelly is her attorney, and her business also has to pay to defend the deposition, right? No, no, he was not her attorney. He represented—it's unclear what his position was, but he created the LLC of which Dr. Meisner— Well, he was involved in her business in some way, and the counsel that's defending her company had to defend that deposition, right? The attorney who appeared to represent Mr. Kelly at some point was—she's had a lot of attorneys come in and out. So at that point, was he also representing Ms. Young? I don't know. I think she was pro se at that time. It's hard for me to answer that question, Your Honor. That also took place, I believe, in 20—I can tell you the exact question, the exact time period when that took place. I believe it was in 2015. Let me just see, Your Honor. But while I'm looking at it, I just want to address the driver's license issue. Again, driver's license was needed because when you request tax returns of an entity from the state of New York, you must fill out a form and submit a tax return of the tax matters partner. Judge Gammerman, who retired judge of the Commercial Division of New York, who was appointed to oversee as a judicial hearing officer the discovery in the state case, ordered Ms. Young to give us a copy of her driver's license securely so that we could get, independently of what she had produced to us, copies of tax returns that were filed. That's the only time her driver's license was used, and it was completely within the context of that Supreme Court case, and that was that. So she's trying to claim that because she knows Dr. Mizer and because of her romantic relationship with him and the fact that he's a pay people and he's a no-good guy, that somehow that becomes protest. I just don't see how that works. Let me ask this question. What is the endgame here? I can't recall seeing such a proliferation of marginal lawsuits in many different courts and indeed abroad. I know this had its genesis in the breakup of a romantic relationship, but what do you all hope to achieve here beyond wasting a great deal of time and resources of both yours and the court's? The defendant's appellees simply would like this court to affirm the order of the district court that dismissed this lawsuit. We think it was ill-advised, and it would be over from our perspective. As for the other aspects of the lawsuit, Dr. Mizer has other attorneys. He has separate attorneys in Delaware, and indeed I don't see separate attorneys in India. He has been trying to protect the name of a company he created, and the allegations against Ms. Young were serious ones, that she took the company, even though she's a minority shareholder, and stole it from them and has fought that from the get-go. But all we seek on this, Your Honor, is an affirmance of the district court, which we think properly found, that the first prong simply wasn't met. The four allegations that took place within the one-year period for this intentional tort under New York law just do not qualify as process because they were simply the filing of a lawsuit or a filing of a notice of appeal in one case. And the judge below didn't examine the other two prongs. There was no need for him to do so. We do address in our papers how those prongs are similarly not met. They failed to show that there was some collateral purpose here. That's a phrase that Mr. Keene used, but that was not addressed below. But they haven't shown that any of the lawsuits that were filed by Dr. Mizer were for any improper purpose. He was trying to seek a money judgment. He was trying to seek control over the company he created with her. And yeah, a lot of emotion in this case, a lot of lawsuits. Ms. Yunus filed two herself, this one and another one that we were able to dismiss. We referenced in our brief. It was called Lancaster. But all we seek is an affirmance of the district court, which properly applied New York law and found that this amended complaint simply does not state a claim for abusive process against either defendants. Is there any questions? Remind me, what is the how many lawsuits have been filed between your people and how many are still pending? The New York lawsuit, which was actually not filed by me or my law firm. I was substituted into that case. That one was resolved in two parts. The judge granted and denied summary judgment in large part in January of this year. And then Dr. Meisner replaced me as counsel, appearing pro se. And I then learned it's a matter of public record that that Ms. Yunus and Dr. Meisner discontinued that main lawsuit in New York with with prejudice against each other without cost or attorney's fees. There is a lawsuit in Delaware that was filed by Dr. Meisner and his company, which is where the courts in New York directed, directed him to go. Had to go down to Delaware because there was an issue about whether Ms. Yunus did or did not properly or improperly or timely or untimely end the status of the LLC. So there was a standing issue that was problematic for Dr. Meisner up here in New York because the courts ultimately found uniformly that you had to go to Delaware to solve that problem. So that case in Delaware, I am not counsel in the case and I do not know what its status is, but I do know that the claims that were being brought down there by Dr. Meisner related to the entity because the the transferee court of Delaware had to have authority over an entity because Ms. Yunus had filed a certificate. I wasn't so much looking at a status report of each of them. I just wanted to be sure I understood the number. There were, there were, Ms. Yunus filed to a trademark application in the middle of the New York lawsuit in 2015, I believe it was maybe 2016, to try to use the name Manhattan Review. And of course, Dr. Meisner found out about that and filed a challenge to that and claimed that she had no right to use it. Again, my firm didn't handle that. The intellectual property handled that. And so those were filed. And so that's how you get the seven cases that Ms. Yunus has cataloged. Am I correct, Mr. Higgins, that in using the number seven, that that included appeals to the appellate division and to the New York Court of Appeals, so that those didn't reflect separate lawsuits necessarily, but reflected continuing proceedings in those lawsuits at different levels? I think it was maybe seven tribunals. Is that correct? I believe that's correct, Your Honor. Ms. Yunus, when she says things like eight appeals lost, which she said at oral argument, I think she counts, for example, when a magistrate judge recommended to the district court to Judge Kaplan a couple of rulings and we raised objections, I think she used those as appeals. I believe you're correct, though, that when she's counting them up, she's counting up appeals as separate. This doesn't include all the Indian litigation, right? No, does not include. I don't believe she mentioned the Indian litigation in her in her brief. I don't know that I think it may actually have been mentioned in the in the in the medical plate. I could have to pull that up, but maybe we could ask Mr. Kuhn, who is counsel to Miss Yun or to the company, at least to enlighten us a little more about the numbers. Since you haven't been involved in all of them, Mr. Higgins, does that work? That'd be funny to just add, though. I did. I did tell Judge Menachie I would try to find out when Christopher Kelly was examined. He was examined in in in August of 2015. So that was well well in advance of the lawsuit. Finally, this lawsuit was outside the statute of limitations period. And as I say, it was within the context of a commercial division case that was overseen by capable state court commercial division judges and and indeed a very capable retired judge. If anyone ever dealt with Judge Cameron before. Thank you very much. I think we have the argument. Mr. Kuhn, you have two minutes. Yes. First, I would like to say there's three underlying lawsuits. There were the New York State proceeding, the Southern District proceeding, and then Delaware proceeding. And then that has led to a, I believe, something in the neighborhood of seven appeals. And there was also the trademark abuse, which have arose out of this in both the U.S. So the trademark defeats in the U.S. involved the party here. So that's the proceedings there. We lay that out in detail in the papers. And that's right. The big the big charts have the tables in the big pictures. I would like to point out that the the the interest into the process listed in the Williams case, which is a court of appeals case, are not exhaustive. It's an exemplary list provided in a footnote by the court of appeals. And the other issue is also, as explained in the Farmingdale case, which is also a New York court of appeals case. The party was standing to assert abuse of process claim isn't necessarily the party that received the process. It's the party that was intended to be harmed by the process, which we which we obviously allege was Manhattan Enterprise Group and Miss Yoon. And that that was the purpose of those subpoenas. Well, what about what about the statute of limitations? So if the process is more than a year before you filed the lawsuit and we think of the process, not as the lawsuit, not as the overall suit itself, but as the subpoenas or depositions that are issued within an individual suit. Do you have a problem overcoming the statute of limitations? I think there's two points to that. There's the Romag case, which is a southern district case which said that the abuse of process claim began to accrue as a dismissal of the prior action. And that's a very similar case involving sort of a litigation history, not just sort of a one off. Do you think even though the process is being abused at one point in the middle of the lawsuit, the claim doesn't actually accrue until the whole lawsuit is terminated? I think in Farmingdale, you think that they could not have sued over all of those subpoenas until when the subpoenas were issued, they would have to wait till the termination of the overall litigation. I think there's no clear answer to this question under existing law, and I think it comes down to you have to look at the situation. When you have a case such as here, which is Romag, such as here or in Romag, and you have this broader litigation context, then I believe it does not accrue until you have a resolution, a dismissal of the prior action. So why is that? So if they're bringing a subpoena to harass somebody or for some collateral purpose, why can't you bring abuse of process action upon the issuance of the subpoena? Isn't that when the harm has occurred? I guess you can have a circumstance where they don't do anything with the information until later, and maybe the claim didn't accrue until later. But if the argument is that it's economic harm and taking up the person's time or something like that, then wouldn't all the elements of an abuse of process claim be apparent when the process is issued? I think when you have it in the broader context of a wider litigation or litigations as the case here, it's tough to say because you can't see the full scope of the damages or if damages did occur until you know the outcome of the litigation. It would be hard to start a collateral lawsuit over an abuse of process claim with a case pending where a court could arguably say that this is without having the context of resolution saying that it was not meritorious or that it wasn't. Were there any subpoenas or deposition notices or anything like that issued that you alleged to be abusive within the year preceding your filing of this suit? The driver's license issue was within one year of filing of this suit and the filing of the Delaware lawsuit which we alleged was a continuation of this campaign. I'd also like to point out that there's also the continuing harm doctrine which we believe is the basis for what we were saying and the ROMAG logic of why in the context of a broader litigation you don't necessarily have to immediately assert the claims and you have to get the dismissal of the prior action or favorable result before the cause of action accrues for abuse of process in that context. Okay, thank you very much Mr. Kuhn. Mr. Higgins, we'll take the matter under advisement. This concludes our oral arguments this morning. I would ask the clerk to please adjourn court. Court is adjourned.